**UNITED STATES of America**

**v.**

**Ricardo McDOWELL, Appellant.**

**No. 84–5790.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 29, 1985.

Decided May 31, 1985.

---

G. Allen Dale, Washington, D.C. (appointed by this Court), for appellant.

Curtis E. Hall, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Judith Hetherton and Douglas J. Behr, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before WALD, MIKVA and STARR, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM.

Ricardo McDowell appeals convictions of unlawful possession of phenmetrazine, a controlled substance, with intent to distribute that drug in violation of section 401(a)(1) of the Controlled Substances Act, 21 U.S.C. § 841(a)(1), and unlawful possession of marijuana in violation of section 404 of the Controlled Substances Act, 21 U.S.C. § 844. At McDowell's trial to a jury, the government offered into evidence, over objection, a bulletproof vest found in the closet of a bedroom McDowell apparently occupied. The government's theory was that because a drug dealer is more likely than other persons to need a bulletproof vest, McDowell's apparent ownership of the vest was probative of his intent to distribute the phenmetrazine. On appeal, McDowell claims that the bulletproof vest was inadmissible evidence of bad character, and that in any event the district court abused its discretion by failing to exclude the vest on the ground that its probative value was substantially outweighed by the danger of unfair prejudice to the defense. We affirm.

I

On May 2, 1984, local police officers appeared with a search warrant at apartment 302, 3074 Stanton Road S.E., Washington, and searched the apartment. Ricardo McDowell, a woman who later became McDowell's codefendant, and the woman's daughter were in the apartment at the time. *See* Trial Tr. at 36–38, 113–14 (Sept. 26, 1984). In the closet of the rear bedroom, the police discovered 600 tablets of phenmetrazine, various items of clothing, and a bulletproof vest. *See id.* at 24–25, 40, 47–50, 75–77. In the rear bedroom itself the police found 172 more tablets of phenmetrazine, approximately one-tenth of an ounce of marijuana, 3 marijuana cigarette butts, over $6,900 in cash, small plastic bags, a note book containing arithmetic

calculations, and various papers and other personal items evidently belonging to McDowell or his codefendant. *See id.* at 21, 25, 32, 40–74, 99–103.

McDowell and his codefendant were indicted for possession of phenmetrazine with intent to distribute and possession of marijuana and were tried jointly. According to expert testimony at the trial, abusers of phenmetrazine typically mix the drug with heroin and inject the mixture intravenously. When used in this way, phenmetrazine heightens the effect of the heroin. Phenmetrazine is legally manufactured as an appetite suppressant under the brand name "preludin," and among abusers is sometimes called "bam." *See id.* at 25; Trial Tr. at 128–30 (Sept. 28, 1984). The phenmetrazine found in the apartment was worth about $10,010 on the street.[1]

At the outset of trial, government counsel explained to the trial judge out of the presence of the jury why the government would seek to introduce the bulletproof vest in evidence:

> There was ... recovered from the bedroom closet, in which 600 of the bam were, a bulletproof vest, and I think that further goes to indicate that an individual may be out selling drugs and wearing the vest for protection.

> It's a logical association and most normal citizens don't need a bulletproof vest. If they are out selling drugs, which is the government's theory, then there's a good reason they have a bulletproof vest.

Trial Tr. at 8 (Sept. 26, 1984). Over objection by McDowell's counsel, the court ruled that the vest was admissible. *Id.* at 9–11. Just before the vest was offered in evidence, counsel for McDowell's codefendant "note[d] for the record our continuing objection to the vest," and the objection was again overruled. *Id.* at 76. One of the police officers who participated in the search then identified the vest as having been found during the search of McDowell's apartment, and the court admitted the vest. *See id.* at 76–77. McDowell, in turn, produced his brother and a friend of his brother, both of whom testified that the vest belonged to the brother and not to McDowell. *See* Trial Tr. at 180, 201–02 (Sept. 28, 1984).

The jury found McDowell guilty on both the phenmetrazine and marijuana counts, and found his codefendant guilty on the marijuana count only. *See* Trial Tr. at 252–53, 267 (Oct. 1, 1984).[2] The district court entered judgment on the verdicts against McDowell, and sentenced him to indeterminate terms of five years on the phenmetrazine count and one year on the marijuana count, to be served concurrently. The court also imposed on him a special parole term under section 401(b)(1)(B) of the Controlled Substances Act, 21 U.S.C. § 841(b)(1)(B). This appeal followed.

## II

McDowell first claims that the bulletproof vest was admitted, in essence, only to show that McDowell was a violent person who was likely to commit crimes. If this were true, admission of the vest would

---

1. The government's expert witness testified that when legally purchased with a medical prescription, the retail price of phenmetrazine is thirty-two cents per tablet. Trial Tr. at 130 (Sept. 28, 1984). When sold illegally in May of 1984, the price to an abuser was generally between nine and thirteen dollars per tablet, although the price could fluctuate to levels as high as twenty-three dollars per tablet. *Id.* at 134. The price of illegally obtained phenmetrazine in May of 1984 to a drug dealer was approximately eight dollars per tablet. *Id.*

When asked for the "approximate *wholesale* value of approximately 770 tablets of phenmetrazine," the witness replied that it was "about,

roughly, $10,010." *Id.* at 135–36 (emphasis added). As this figure appears to be based on a price of thirteen dollars per tablet, the top of the typical range the witness had earlier given for the retail price on the street, we assume the witness misunderstood the question and gave the retail rather than wholesale figure.

2. The jury was unable to reach a verdict on the phenmetrazine charge against McDowell's codefendant, *see* Trial Tr. at 266–67 (Oct. 1, 1984), and the district court then dismissed that charge on the government's motion, *see id.* at 267. She does not appeal her conviction on the marijuana charge.

have been barred under Federal Rule of Evidence 404, which provides, with various exceptions not relevant here, that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Fed. R.Evid. 404(a). The rule also states that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

■ We think, however, that admission of the bulletproof vest does not run afoul of rule 404. The government was required to show not only that McDowell possessed the seized phenmetrazine, but that he intended to distribute the drug. The government's evidence of intent was chiefly the large quantity of the drug seized, which was, according to expert testimony, much beyond the needs of a single abuser. *See* Trial Tr. at 135 (Sept. 28, 1984). The government supported that evidence by pointing to the large sum of cash found in the apartment; the plastic bags, which were suitable for use in distributing drugs;

a notebook found in the rear bedroom with arithmetic notations that might have recorded drug transactions; and the bulletproof vest itself. We believe that the bulletproof vest was squarely relevant on the issue of intent, for exactly the reason identified by government counsel: someone who intends to sell a substantial amount of phenmetrazine is more likely than an ordinary drug abuser to fear that others might try to shoot him, and to acquire a bulletproof vest in order to guard against that danger. The vest was not offered to prove a bad character and thus, by inference, a propensity to commit crimes. The vest was logically part of the specific equipment McDowell might use in selling the drug, and thus tended to show that McDowell actually intended to make such sales.

■ Because the vest was not offered as evidence of McDowell's character, its admission was not barred by rule 404(a). And because the vest qualified as evidence of intent rather than evidence "to prove the character of a person," the vest was admissible under rule 404(b) even if possession of the vest might be considered evidence of an extrinsic "act." [3]

### III

■ Next, McDowell claims that the vest should have been excluded under rule 403,

---

**3.** *United States v. Shelton,* 628 F.2d 54 (D.C.Cir. 1980) imposed a limit in addition to the explicit strictures of rule 404(b) on the use of evidence of an alleged extrinsic crime not reduced to final judgment: such evidence may, under *Shelton,* be admitted only if "the trial court ... make[s] a preliminary finding that there is 'clear and convincing evidence' to connect the defendant to the other crime." *Id.* at 56 (footnote omitted); *see also United States v. Moore,* 732 F.2d 983, 988 (D.C.Cir.1984); *cf. United States v. Lopez-Martinez,* 725 F.2d 471, 476–77 (9th Cir.) (clear and convincing requirement applies to all evidence of other crimes, wrongs, or acts subject to rule 404(b)), *cert. denied,* — U.S. —, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984); *United States v. Beechum,* 582 F.2d 898, 909–14 (5th Cir.1978) (en banc) (rejecting Fifth Circuit's earlier requirement of "plain, clear, and convincing" proof for evidence of extrinsic offenses), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). This heightened protection has developed in part to balance the danger

that casual use of other crimes evidence might encourage the jury to convict a defendant of the extrinsic crime, rather than the crime with which he is charged. *Cf. United States v. James,* 555 F.2d 992, 1000 & n. 49 (D.C.Cir.1977).

Introduction of the bulletproof vest in this case, however, raised little prospect that the jury might convict out of revulsion towards any extrinsic act suggested by the vest. We acknowledge that the vest could conceivably be characterizing as evidence pointing to habitual drug dealing, and thus as oblique evidence of other crimes. However, the vest was seized at the same time and place as the phenmetrazine tablets and could well have been used in distributing those very tablets. Evidence that is so closely tied to commission of the actual crime charged and only indirectly suggests distinct offenses should not, we believe, fall within the *Shelton* rule requiring clear and convincing proof connecting the evidence and the defendant. We consequently decline to apply that rule here.

which states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. In making this determination, the balance in close cases should be struck in favor of admission. *See United States v. Day,* 591 F.2d 861, 878 (D.C.Cir.1978). In assessing on appeal whether the district court's weighing of probative value against the danger of unfair prejudice was an abuse of discretion, courts ordinarily " 'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.' " *Id.* at 879 (quoting J. Weinstein & M. Berger, Weinstein's Evidence ¶ 403[03] at 403–18 (1977)); *see also United States v. Weisz,* 718 F.2d 413, 431 (D.C.Cir.1983) (district court's weighing under rule 403 will be disturbed only for grave abuse), *cert. denied,* —— U.S. ——, 104 S.Ct. 1285, 1305, 79 L.Ed.2d 688 (1984).

McDowell maintains that the probative value of the vest was very slight. On appeal, he argues that the only real issue at trial was whether McDowell possessed the drugs. Once the possessor or possessors were identified, McDowell claims that an inevitable inference of intention to distribute would arise from the very large quantity of phenmetrazine involved. On this theory, the vest was unnecessary to show that the possessor of the drugs intended to sell them, and consequently had only cumulative probative force on the single point for which it could be offered. In contrast, McDowell views the unfair prejudice arising from admission of the bullet-proof vest as very great, since the vest tended to associate him with violence.

We note, however, that when the district judge asked McDowell's counsel at trial whether he was willing to stipulate that the possessor of the phenmetrazine intended to distribute it, counsel failed to respond.[4] While the large amount of phenmetrazine seized made it highly likely that its possessor intended to distribute it, we believe it was well within the district court's discretion to admit further evidence on the point as having additional probative value. There was, after all, no direct proof of distribution; the government instead sought to prove intent to distribute from the circumstances surrounding possession of the drug. The district court could reasonably have concluded that introduction of the vest would appreciably add to the government's proof.

McDowell views the violent overtones of the vest as seriously prejudicial. The vest, however, is a defensive device; it suggests fear of attack more than a willingness to attack others.[5] We believe, in short, that the district court could reasonably have concluded that the vest had significant probative value and was not unduly prejudicial. We also observe that McDowell's counsel did not, so far as the record reveals, ask the court to explain to the jury the limited purposes for which the vest was introduced. *Cf. United States v. DeLoach,* 654 F.2d 763, 769 (D.C.Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 366, 450 U.S. 1004, 101 S.Ct. 1717,

---

**4.** *See* Trial Tr. at 10–11 (Sept. 26, 1984). Had defense counsel clearly offered to stipulate that the possessor of the phenmetrazine tablets intended to distribute them, this case would be quite different. *Cf. United States v. Foskey,* 636 F.2d 517, 524 n. 5 (D.C.Cir.1980) ("prior crimes evidence may not be introduced on issues that are not contested") (citation omitted); *United States v. Holman,* 680 F.2d 1340 (11th Cir.1982) (where defendants charged with smuggling marijuana denied that intent was disputed but repeatedly refused to stipulate that intent was not at issue, district court did not err in admitting evidence of prior efforts to smuggle marijuana as bearing on intent). *See generally* 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[09] at 404–50 to 404–51 & nn. 3–5 (1982 &

Supp.Dec.1984) (collecting cases on admission of other crimes evidence bearing on stipulated facts).

**5.** The police in this case in fact also found a loaded pistol in the rear bedroom of the apartment during the May 2, 1984 search. *See* Trial Tr. at 7 (Sept. 26, 1984). The district court refused to admit the pistol because it was, in the court's view, "somewhat inflaming." *Id.* at 11. That ruling is not before us for review. *Cf.* 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 401[10 at 401–55 to 401–56 & nn. 7–10 (1982 & Supp. Dec. 1984) (collecting cases dealing with admission of firearms as paraphernalia associated with various crimes).

68 L.Ed.2d 209 (1981); *United States v. Marino,* 658 F.2d 1120, 1123–24 (6th Cir. 1981). In light of these considerations, we have no difficulty upholding the district court's decision to admit the bulletproof vest.

CONCLUSION

We find that the bulletproof vest introduced in this case was not offered as "[e]vidence of a person's character or a trait of his character" within the meaning of Federal Rule of Evidence 404(a); that even if possession of the vest might be considered evidence of "other crimes, wrongs, or acts" under rule 404(b), the vest was nonetheless properly admitted as proof of intent; and that the district court did not abuse its discretion in concluding that the probative value of the vest was not substantially outweighed by the danger of unfair prejudice under rule 403. The judgment of the district court is accordingly

*Affirmed.*