UNITED STATES of America

v.

Frederick V. PAYNE, Appellant.

No. 86–3002.

United States Court of Appeals, District of Columbia Circuit.

Submitted Oct. 23, 1986.

Decided Nov. 21, 1986.

As Amended Nov. 21, 1986.

William J. Garber, Washington, D.C., appointed by the court, was on the brief for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., Ronald Dixon and Anita J. Stephens, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, and EDWARDS and STARR, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Appellant Frederick Payne appeals his conviction for possession with intent to distribute a controlled substance, marijuana, in violation of 21 U.S.C. § 841(a) (1982). Payne contends that the district court erred in admitting into evidence two loaded and operable pistols seized along with a large quantity of marijuana from his apartment. He also raises several instances of claimed instructional error. We find no error and therefore affirm.

## I

On April 25, 1985, Payne and a co-defendant, Homero Martinez, were charged by indictment with possession with intent to distribute marijuana. Payne was also charged in the same indictment with possession of an unregistered firearm in violation of D.C.Code Ann. §§ 6–1811(a), 6–1876 and unlawful possession of ammunition in violation of the same provisions. Prior to trial, the marijuana charge against Martinez and the two firearms charges against

Payne were dismissed.[1] However, Payne was then charged by information with possession of a controlled substance, cocaine, in violation of 21 U.S.C. § 844(a) (1982). Payne proceeded to trial alone on charges of possession of cocaine and possession of marijuana with intent to distribute. On November 8, 1985, Payne was convicted of the marijuana charge and acquitted on the cocaine charge.

The background leading up to the two drug charges is as follows: On March 28, 1985, agents of the Federal Bureau of Investigation (FBI) and officers of the Metropolitan Police Department (MPD) executed a search warrant for 520 E Street, Northeast, Apartment 303. The lessee of the apartment was one Emma Henson. It is undisputed, however, that Payne considered the apartment to be his home, having lived there with Ms. Henson since 1982. As FBI Special Agent James Glass and several MPD officers entered the apartment building, Special Agent Patrick Gray and two other MPD officers stationed themselves outside. From his vantage point, Agent Gray could see the windows of Apartment 303, situated on the third floor. At the moment Agent Glass was forcibly gaining entry to the apartment, Agent Gray watched as one of the apartment windows opened and a large green plastic trash bag was thrown onto the street below. This bag was recovered and found to contain twelve to thirteen small plastic bags containing what later proved to be marijuana. Leaving the trash bag in the custody of the MPD officers, Agent Gray then joined Agent Glass inside the apartment where he recovered three half-bales of marijuana. One bale was recovered from the kitchen and two others from a brown suitcase found in the hallway inside the apartment. A triple beam scale, a kitchen scale, $86 in currency and seven boxes of zip-lock plastic bags were also recovered.

Agent Glass, who in the company of several MPD officers first gained entry into the apartment, testified that after entering, he proceeded directly to the dining room where he observed Payne throwing an object out the window. A plastic zip-lock bag containing marijuana was at Payne's feet. Agent Glass then recovered two loaded pistols. A .357 magnum revolver was found on the floor beside Payne's bed, and a .38 revolver in a leather pouch on the dining room table. Also contained in the pouch was a small quantity of what proved to be cocaine. Both weapons were fully loaded. The .357 magnum was loaded with hollow point shells.

At trial, the Government presented testimony that approximately forty pounds of marijuana were recovered from Payne's apartment. According to the Government's expert, this amount of marijuana had a potential street value of $20,000–$60,000. The expert opined that such a quantity of marijuana "far exceeds" what an individual would have for personal use.

In addition to the marijuana, the Government introduced into evidence the scales, money, zip-lock bags and guns recovered from Payne's apartment. According to the Government's expert, all these materials were consistent with a drug trafficking operation. The expert opined that the scales, particularly the intricate triple beam scale, are used in the process of breaking down marijuana "bricks" or "bales" into smaller, more marketable quantities known as "lids." These "lids" are then packaged for distribution in plastic zip-lock bags. The expert further opined that drug dealers frequently carry weapons to protect themselves and their drug supply. Over objection, the weapons were introduced into evidence.[2]

Payne's defense was one of complete denial. He testified that on the morning of his arrest, he was approached outside his apartment by Homero Martinez. Martinez,

---

1. Also dismissed was an information filed by the Government charging Payne with firearms and ammunition possession in violation of the District of Columbia Code.

2. Defense counsel did not request a cautionary instruction limiting the use to which the evidence could be put.

carrying a brown suitcase, told Payne, "I have something for you." Once inside the apartment, Martinez opened the suitcase, revealing a substantial amount of marijuana. By his account, Payne immediately told Martinez that he "didn't want to get involved" and ordered him "to take [the drugs] out of [his] apartment."[3] Payne also denied that the weapons found in his apartment were for the purpose of protecting a drug trafficking operation. He maintained that the .38 revolver was for his personal protection and that he was keeping the .357 magnum for a friend.

## II

Payne contends, first, that the guns were admitted only to show that he is a person of bad character and accordingly should have been excluded under Federal Rule of Evidence 404. That Rule provides that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Fed.R.Evid. 404(a). However, the Rule goes on to provide in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

In this case, the Government was required to prove not only that Payne possessed the marijuana seized from the apart-

ment, but that he did so with the specific intent to distribute. Intent being properly at issue, and accordingly being subject to proof by relevant, probative evidence, the Government offered testimony that the amount of marijuana seized was "far in excess" of an amount suitable for personal use. As we previously recounted, the prosecution also offered into evidence paraphernalia frequently associated with marijuana dealers, namely, scales and zip-lock bags, to further demonstrate the requisite intent. This evidence was squarely relevant on the issue of intent and thus properly admitted. *See United States v. Raper*, 676 F.2d 841, 845 (D.C.Cir.1982). The issue presented here is whether the guns seized from Payne's apartment were similarly admissible.

In *United States v. McDowell*, 762 F.2d 1072 (D.C.Cir.1985), we held that a bullet proof vest was properly admitted as evidence of intent to distribute narcotics.[4] The court concluded that the vest was offered not as proof of bad character, but, instead, was "logically part of the specific equipment McDowell might use in selling the drug." *Id.* at 1075. The vest "thus tended to show that McDowell intended to make such sales." *Id.* In our view, *McDowell*'s reasoning applies here. Indeed, it has uniformly been recognized that substantial dealers in narcotics possess firearms and that such weapons are as much tools of the trade as more commonly recognized drug paraphernalia. *United States v. Sarda-Villa*, 760 F.2d 1232, 1234 n. 1 (11th Cir.1985); *United States v. Adams*, 759 F.2d 1099, 1109 (3rd Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 336, 88 L.Ed.2d 321

---

**3.** Payne offered two versions of the events which immediately followed. By the first version, ten minutes after ordering Martinez to take the drugs out of the apartment, Payne was "panicked" by a knock on the door which prompted him to toss the green garbage bag out of the window. (Apparently some marijuana was taken from the suitcase and put into a garbage bag and placed on or near the window-sill by Martinez.) The second version has approximately one hour and fifteen minutes elapsing between Payne's disavowal of the suitcase and the knock on the door and the arrival of the police. By either version, Payne's testimony is

consistent on his rejection both of the contraband and any suggestion by Martinez that the drugs be stored in Payne's apartment for future distribution.

**4.** The district court in *McDowell*, while admitting the vest into evidence, refused to admit a pistol because it was, in that court's view, "somewhat inflaming." *United States v. McDowell, supra*, 762 F.2d at 1076 n. 5. Thus, the specific issue presented here was not before us in *McDowell*.

(1985); *United States v. Collazo*, 732 F.2d 1200, 1206 (4th Cir.1984), *cert. denied*, 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985); *United States v. Arnott*, 704 F.2d 322, 326 (6th Cir.), *cert. denied*, 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed.2d 325 (1983); *United States v. Romero*, 692 F.2d 699, 705 (10th Cir.1982); *United States v. Perez*, 648 F.2d 219, 224 (5th Cir.), *cert. denied*, 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981); *United States v. Picklesimer*, 585 F.2d 1199, 1204 (3rd Cir.1978); *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80 (1976); *United States v. Cannon*, 472 F.2d 144, 145 (9th Cir.1972). In addition to the overwhelming weight of authority from other circuits, with which we agree, this court has previously had occasion to recognize the connection between weapons and narcotics distribution. *See White v. United States*, 648 F.2d 29, 34 n. 29 (D.C.Cir.), *cert. denied*, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981).

Because the guns were not offered as evidence of Payne's character, their admission was not barred by Rule 404(a). Further, because the guns were directly relevant to the issue of Payne's intent to distribute, they were admissible under Rule 404(b).[5]

■ Payne's fallback position is that, even if admissible under Rule 404, the guns should have been excluded under Federal Rule of Evidence 403. Rule 403 states in part that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." In making a determination on this issue, the balance in close cases is struck in favor of admission. *United States v. McDowell, supra*, 762 F.2d at 1076. Further, the district

court's determination on this issue will be disturbed only for grave abuse. *United States v. Weisz*, 718 F.2d 413, 431 (D.C.Cir. 1983), *cert. denied*, 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984).

■ Payne argues that the guns were of slight probative value in light of the quantity of marijuana seized from his apartment. Not so. While evidence of a significant quantity of drugs is highly suggestive of intent to distribute, *United States v. Raper, supra*, 676 F.2d at 845, that fact alone does not foreclose introduction of additional relevant evidence on a hotly contested issue. As we have seen, there was no direct evidence of distribution in this case. Instead, the Government was put to the task of proving—beyond a reasonable doubt—intent solely by circumstantial evidence; the two weapons were certainly probative of such intent under the overwhelming weight of authority indicated above. The justification for such evidence in this case was further enhanced by Payne's complete protestation of innocence as to any involvement in the drug trade. As we said in *McDowell*, "[t]he district court could reasonably have concluded that introduction of [the evidence] would appreciably add to the government's proof." *United States v. McDowell, supra*, 762 F.2d at 1076. The same holds true here.

We do not overlook the fact that loaded and operable pistols are more suggestive of a violent nature than the vest admitted in *McDowell*. Unlike a bullet proof vest, weapons, and certainly those admitted here, are more likely to indicate a propensity to engage in violent acts. Nevertheless, in the circumstances presented here, we conclude that the admission of the guns was not unfairly prejudicial. The guns

---

**5.** We are satisfied that the rule announced in *United States v. Shelton*, 628 F.2d 54 (D.C.Cir. 1980), namely that evidence of an alleged extrinsic crime may be introduced only if the trial court makes a preliminary finding that there is "clear and convincing evidence to connect the defendant to the other crime," does not apply in the circumstances at hand. *Id.* at 56. The guns admitted here were seized at the same time and place as the narcotics and could very well have

been used in their distribution. In addition, nothing in the record suggests that Payne used the guns in any context other than the protection of his cache of drugs. As in *United States v. McDowell, supra*, 762 F.2d at 1075 n. 3, we conclude that "[e]vidence that is so closely tied to the commission of the actual crime charged and only indirectly suggests distinct offenses" does not fall within *Shelton*.

were admitted solely on the issue of intent. Importantly, the Government made no attempt to suggest that Payne engaged in gunplay or otherwise used the guns to threaten or inflict harm on others. Introduction of the guns into evidence was done solely in the context of other drug-related paraphernalia found in the defendant's apartment. As such, the guns were not introduced at a point during the presentation of evidence that can fairly be viewed as inflammatory or unfairly prejudicial. Moreover, defense counsel did not even request a cautionary instruction on the limited use to which the guns could be put.[6] We conclude, under these circumstances, that the district court did not abuse its discretion in admitting the guns into evidence.

### III

■ Payne's remaining contentions arise from alleged instructional errors at trial. He argues first that the district court erred in denying his request for an instruction on the lesser included offense of simple possession.

Under settled law, a criminal defendant is entitled to an instruction on a lesser included offense "if there is any evidence fairly tending to bear upon the lesser included offense 'however weak' that evidence may be." *United States v. Thornton*, 746 F.2d 39, 47 (D.C.Cir.1984), *quoting Belton v. United States*, 382 F.2d 150, 155 (D.C.Cir.1967).

However, the refusal to give such an instruction is not error in two situations: *first*, where the defenses offered at trial are purely exculpatory, and if believed would lead only to acquittal; and *second*, where the evidence is such that the jury could not rationally find the defendant guilty of the lesser offense. *United States v. Thornton, supra*, 746 F.2d at 47. Both principles are applicable in this case.

Payne's defense, as we have seen, was entirely exculpatory. He testified that his first and indeed only reaction upon realiz-

ing that Martinez had brought marijuana into his home was to tell Martinez that he "didn't want to get involved" and to get the drugs "out of [his] apartment." Throughout his testimony, Payne denied that he had any power or intention to exercise dominion and control over the marijuana. In short, "the defense's case was not in any sense compatible with the proposition that [Payne] may have been guilty only of possession." *United States v. Thornton, supra*, 746 F.2d at 47. Such a defense does not lend itself to a lesser included offense instruction. *Id.* at 48.

However, even where the defendant presents a totally exculpatory defense, the instruction should nevertheless be given if the prosecution's evidence provides a "rational basis" for the jury's finding the defendant guilty of a lesser offense. *Id.* No such basis exists here.

The Government's theory throughout trial was that Payne was a drug trafficker. If the jury believed the Government's witnesses that forty pounds of marijuana and its associated paraphernalia were recovered from Payne's apartment, and that Payne himself was observed throwing a significant amount of marijuana out of a third-story window, the jury would have had no rational basis for returning a guilty verdict of simple possession. *Id.* Under those circumstances, the district court properly denied Payne's request for a lesser included offense instruction of simple possession.

■ Payne's remaining contention, that the district court erred in denying his requests for special instructions on possession and the Government's burden of proof, has no merit. The district court is under no obligation to give the jury charge in the specific language requested by the defense. *Gregory v. United States*, 410 F.2d 1016, 1024 (D.C.Cir.), *cert. denied*, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969). Further, the jury was correctly instructed on the burden of proof, possession, and the defense theory of the case. A careful re-

---

**6.** Payne does not assert that the ensuing failure to give a cautionary instruction was plain error.

view of the instructions given in this case reveals no error.

Accordingly, the judgment of conviction is

*Affirmed.*