911 F.2d 725
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jacqueline JONES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patricia Louise LYDE, Shirley Ann James, Defendants-Appellants.
 Nos. 89-5694, 89-5695.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 19, 1990.
Decided Aug. 7, 1990.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. John R. Hargrove and Herbert N. Maletz, District Judges. (CR-88-227-HAR).
 Joseph S. Longo, Jr., Baltimore, Md., Alan R. L. Bussard, Towson, Md., Edward J. Smith, Jr., Cummings & Smith, P.A., for appellants.
 Breckinridge L. Willcox, United States Attorney, Katharine Jacobs Armentrout, Assistant United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN, SPROUSE and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Jacqueline Jones, Patricia Louise Lyde and Shirley Ann James appeal their convictions in the United States District Court for the District of Maryland on charges of conspiracy to distribute and to possess with intent to distribute heroin and cocaine, and related charges. Jones and James argue that there is insufficient evidence to sustain their convictions on counts of conspiracy and using a communications facility to facilitate a drug conspiracy, respectively. James also claims that her rights under the Confrontation Clause were violated by the court's admission of coconspirator statements. Lyde claims that the district court erred in refusing to give a lesser included offense instruction on the charge of possession with intent to distribute heroin and cocaine. She also challenges the admission of evidence obtained from a search of her residence on the ground that the affidavit supporting the search warrant was inadequate. Finally, appellants claim that the court erroneously allowed the jury to have transcripts of a wiretap tape recording during its deliberations. We find no merit in appellants' assignments of error and affirm the judgments of conviction.
 
 I.
 
 2
 In 1987 Baltimore City police, in conjunction with the Federal Bureau of Investigation, began an investigation of Leroy James for suspected drug dealing. It included an undercover operation at the East Coast Tire and Auto Shop (East Coast), a business owned by Leroy James. Police also obtained authorization for a court ordered wiretap at East Coast and at another business owned by James.
 
 
 3
 Pursuant to the wiretap, police overheard conversations between Leroy James and Shirley James on June 3, 1988, and between Leroy James, Michael Alston (a government witness) and John Doe, a/k/a "Luke" (Leroy James' drug supplier), on June 8, 1988. The phone calls revealed that a drug courier called Jacqueline Jones was to arrive on June 8 between 2:20 and 3:00 PM, on a plane flying from Miami to Baltimore-Washington Airport. On the basis of this information, police and drug enforcement agents met at the airport. Jacqueline Jones arrived at the airport on a flight from Miami, traveling under the name "Jackie Smith." She was detained and searched by Baltimore City Police but no drugs were found. Jones was then observed by surveillance units traveling to the Beltway Motel in Baltimore. Michael Alston was also observed arriving at the motel. Alston testified at trial that he had met Jones to get cocaine that she had obtained from Luke in Miami and had brought to Baltimore hidden on her person.
 
 
 4
 In July 1988 police intercepted telephone conversations between Leroy James, Raymond Wilson (one of James' co-conspirators who later testified for the government), and Luke, who was in Miami. The calls suggested that Wilson's sister, Gladys Hill, was to fly to Miami on July 2, 1988, and return with drugs obtained from Luke. When police intercepted Hill upon her return to the Baltimore-Washington Airport from Miami they recovered three ounces of heroin in her possession. Hill was arrested.
 
 
 5
 On July 4, 1988, police intercepted a conference call by Shirley James to Wilson and Leroy James discussing Hill's arrest. Wilson assured the others that his sister was "not going to say anything in reference to nobody." Shirley James indicated that she regretted not having gone with Hill on her "first time." She offered to deliver personal items to Hill so Wilson would not "jeopardize" himself. In a later call that same day, Wilson called Shirley James to tell her that his sister was "hanging tough" in jail. James again offered to take cigarettes, clothing and other personal items to Hill at the jail. The July 4, phone conversations were the basis for the telephone count against Shirley James.
 
 
 6
 Michael Alston testified at trial that he returned to Florida on July 8, 1988, to attempt to get more cocaine from Luke. Alston testified that Jones was present during the negotiations for cocaine and offered to transport the drugs back to Baltimore.
 
 
 7
 On July 9, 1988, police intercepted a phone call in which Shirley James told her brother Leroy that she had found a source of cocaine for him. Later that day he called her back to say that the source had not worked out.
 
 
 8
 On July 14, 1988, police intercepted a phone call by Leroy James to a residence on Tramore Road in Baltimore, which he shared with his girlfriend, Patricia Lyde. (The Tramore residence was in Lyde's name; however, the evidence at trial showed that Leroy James had paid the down-payment of $14,000 in cash.) James instructed Lyde to bring a "sandwich I left in the basement ... for my body and fender man I was telling you about." He further instructed Lyde to bring the "little teeny sandwich" and not to bring the "big sandwich" that was on the "television or dresser." Lyde agreed to be there at 4:30 PM.
 
 
 9
 Sergeant Lehmann testified that ounce amounts of drugs are packaged in "sandwich" bags. Michael Alston testified that he was James' "body and fender man," that James partially paid him in drugs for work he performed, and that in the conversation excerpted above Leroy James was arranging for Lyde to bring drugs to East Coast for Alston. Lyde was convicted of a telephone count in connection with this phone call.
 
 
 10
 On July 28, 1988, police conducted a search of the Tramore residence pursuant to a warrant. Among the items recovered were four guns, a drug tally sheet, a police scanner, a gram scale, several ounces of heroin and a large quantity of cocaine. Lyde and Leroy James were found in the basement bedroom where the cocaine and some of the heroin were recovered.
 
 
 11
 On January 11, 1989, the grand jury returned a nineteen count indictment against appellants and eight other individuals. All three appellants were charged with conspiracy to distribute and possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. Sec. 846. Jones was charged with one count of possession with intent to distribute cocaine on June 8, 1988, in violation of 21 U.S.C. Sec. 841(a)(1), and one count of interstate travel in aid of the narcotics conspiracy, in violation of 18 U.S.C. Sec. 1952. James was charged with one count of use of the telephone to facilitate the narcotics conspiracy, in violation of 21 U.S.C. Sec. 843. Lyde was charged with two counts of use of a telephone to facilitate the narcotics conspiracy, one count of money laundering, in violation of 18 U.S.C. Sec. 1956, and one count of possession with intent to distribute heroin and cocaine on July 28, 1988, in violation of 21 U.S.C. Sec. 841(a)(1). After a jury trial, appellants were convicted on all counts except one. Lyde was acquitted on one count of use of the telephone to facilitate a narcotics conspiracy.
 
 
 12
 Defendants now appeal.
 
 II.
 
 13
 Appellants claim that the district court erred in allowing the admission of transcripts of a tape recording from the wiretap to be admitted into evidence as an aid to the jury.
 
 
 14
 We disagree. The court carefully considered the issue of whether to allow the transcripts to be used during the presentation of evidence to the jury. The district judge made it very clear that he was admitting the transcripts for the limited purpose, see United States v. Onori, 535 F.2d 938, 947 (5th Cir.1976), of aiding the jury's understanding of the actual tape recordings themselves. He instructed the jury that in the case of discrepancies between the tapes and the transcripts, the recordings controlled. See United States v. Adams, 759 F.2d 1099, 1115 (3d Cir.1985). See generally United States v. Rengifo, 789 F.2d 975, 980-84 (1st Cir.1986). The judge admonished the jury as follows:
 
 
 15
 Transcripts are being furnished for your guidance as you listen to the tapes, in clarifying portions of the tapes which are difficult to hear and [to] identify speakers. The tapes, however, are evidence in the case, and the transcripts are not evidence. If you perceive any variation as between the tape and the transcript, you will be guided solely by the tape and not the transcript. If you cannot determine from the tape what particular words were spoken, you must disregard the transcripts insofar as these words are concerned.... To summarize, at the risk of repetition, the transcripts are aids and guides. The recordings constitute the evidence in the case.
 
 
 16
 When defense counsel objected that the transcripts were inaccurate, the judge offered counsel the opportunity to submit their own transcripts of the recordings. See Onori, 535 F.2d at 948 (trial court need not decide whether transcript is accurate "so long as each side ... is given an opportunity to submit a transcript containing its version of a conversation"). The judge concluded after "listen[ing] very carefully to the tapes" that the transcripts "are, with a few minor exceptions, extremely accurate." However, he agreed to give another limiting instruction when he instructed the jury before their deliberations. At that time he admonished the jury as follows:
 
 
 17
 If, during your deliberations, you determine that you wish to listen to one or more taped conversations, you may play them. At that time, if you wish, you may use the transcripts as an aid to understanding the conversations. You must not use the transcripts at any time except when playing the tapes, as a transcript is only an aid to understanding the tape recordings or identifying a voice.
 
 
 18
 We conclude that the district court did not abuse its discretion in allowing the transcripts to be admitted as aids to the jury and in allowing the jury to use them in its deliberations.
 
 III.
 
 19
 Appellant Lyde claims that the district court erred in failing to give a lesser included offense jury instruction on the charge of possession with intent to distribute heroin and cocaine. We again disagree.
 
 
 20
 A defendant is entitled to such an instruction only "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." United States v. Blankenship, 548 F.2d 1118, 1120 (4th Cir.1976) (quoting Keeble v. United States, 412 U.S. 205, 208 (1973)). In the instant case appellant Lyde's defense was "purely exculpatory," and thus, if believed by the jury, would have led to a judgment of acquittal rather than to a conviction on a lesser offense. United States v. Payne, 805 F.2d 1062, 1067 (D.C.Cir.1986). Lyde claimed that she had never used or possessed drugs, that she was unaware that there were drugs at her residence, and that she had never before slept in the bedroom where drugs were found. An instruction of simple possession would have been inconsistent with her defense.
 
 
 21
 In addition, "the evidence is such that the jury could not rationally find the defendant guilty of the lesser offense." Id. The evidence obtained in the search of the Tramore residence tended to show that it was the site of a major drug dealing scheme. Police recovered approximately $30,000 worth of heroin and $10,000 worth of cocaine in packages lying out in plain view, as well as firearms, a police scanner, a scale suitable for weighing drugs, and other accoutrements of drug trafficking activities. The evidence is simply not consistent with the conclusion that Lyde was guilty of simple possession.
 
 IV.
 
 22
 We also find that there is sufficient evidence to sustain appellants' convictions on all counts and find no merit in appellants' other assignments of error. The judgments of conviction are
 
 
 23
 AFFIRMED.