**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Nicholas PADILLA, Defendant–Appellant.**

Nos. 02–50636, 03–50286.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2004.

Filed Nov. 2, 2004.

---

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, CA, for the defendant-appellant.

William C. Bottger, Jr., Assistant United States Attorney, Terrorism & Organized Crime Section, Los Angeles, CA, for the plaintiff-appellee.

Before WALLACE, CANBY, JR., and THOMAS, Circuit Judges.

CANBY, Circuit Judge.

Nicholas Padilla appeals his jury conviction of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Padilla argues that his motion for new trial should have been granted because, after his conviction, a state court invalidated his predicate state conviction *nunc pro tunc*. Padilla also challenges the district court's admission of a statement obtained from him allegedly in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Finally, Padilla contends that the district court erred in admitting expert testimony relating to gang behavior. We reject all of these contentions and affirm Padilla's conviction.

After this appeal had been submitted for decision, the Supreme Court of the United States decided *Blakely v. Washington*, — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Padilla moved for supplemental briefing on the effect of *Blakely* on his sentence. In the interest of judicial economy, however, we do not address the *Blakely* issues, and we accordingly deny Padilla's motion. Because the Supreme Court has pending two appeals that are likely to shed light on *Blakely's* effect on the United States Sentencing Guidelines, *see United States v. Booker*, — U.S. —, 125 S.Ct. 11, 159 L.Ed.2d 838, 2004 WL 1713654 (U.S. Aug.2, 2004); *United States v. Fanfan*, — U.S. —, 125 S.Ct. 12, 159 L.Ed.2d 838, 2004 WL 1713655 (U.S. Aug.2, 2004), we remand to the district court with instructions to resentence in accord with those Supreme Court decisions if they affect Padilla's sentence.

## I. Background

In July 2002, Nicholas Padilla was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Padilla's prior felony was a California state conviction in January 1997 for possession of cocaine for sale. The felon-in-possession charge stemmed from Padilla's conduct on January 30, 2001, when two Los Angeles police officers made a traffic stop of Padilla's vehicle. Padilla stepped out of his vehicle, withdrew a loaded .38 caliber revolver from his waistband and threw it away before he and his passenger, Gustavo Villa, fled on foot. Prior to trial, Padilla stipulated that he previously had been convicted of a felony punishable for a term exceeding one year. The only disputed issue at trial was whether Padilla was in possession of the gun on January 30, 2001.

The government called three witnesses in its case in chief. Los Angeles Police Officers Parga and Kirkpatrick testified as to the events of January 30, 2001. Parga was the only one to see Padilla dispose of the gun. Federal Bureau of Investigation ("FBI") Special Agent Scott Garriola testified with regard to two contradictory

statements that Padilla made to him; the first of those statements is challenged by Padilla in this appeal.

Two witnesses testified for the defense. The passenger in the car, Villa, testified that the gun was his and that Padilla did not know that Villa had the gun when he got into Padilla's car. Villa also testified that both he and Padilla were members of the Cuatro Flats street gang. The second defense witness was Samantha Ramirez, who corroborated some of Villa's testimony.

In rebuttal, the government called Detective William Eagleson as an expert on gangs. Eagleson testified that it was his experience that gang members would not testify against one another, and that violation of this basic gang tenet would lead to violent retaliation. Eagleson further testified that, in his experience, gang members at a lower level within the gang hierarchy would often take the blame for a higher status member in order to demonstrate their loyalty to the gang. Finally, he testified that if a lower ranking member failed to take the blame for a higher ranking gang member, he would likely suffer severe retaliation, perhaps even death.

The jury returned a guilty verdict. Approximately six months after Padilla's conviction, the Los Angeles Superior Court entered an order vacating Padilla's state felony conviction "*nunc pro tunc* to January 9, 1997," because Padilla had been a minor at the time that he was convicted as an adult. Padilla moved for a new trial on the strength of the state court's order. The district court denied the motion.

## II. Discussion

### A

Padilla contends that the district court was required to grant his motion for a new trial because the state court's order vacating his predicate conviction *nunc pro tunc* rendered his federal conviction for

violating 18 U.S.C. § 922(g)(1) invalid. The district court rejected this argument, ruling that the state court's order did not affect Padilla's status as a felon at the time he possessed the firearm. We review for an abuse of discretion a district court's denial of a motion for a new trial. *See United States v. Reyes–Alvarado*, 963 F.2d 1184, 1188 (9th Cir.1992). We conclude that the district court did not abuse its discretion.

The Supreme Court has held that a prior conviction that is subject to collateral attack on the ground of constitutional invalidity may nevertheless serve as the predicate felony conviction for a charge of being a felon in possession of a firearm. *See Lewis v. United States*, 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). In *Lewis*, the defendant collaterally attacked his underlying conviction on the ground that he had been denied the right to counsel guaranteed by *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See Lewis*, 445 U.S. at 56, 100 S.Ct. 915. The Court determined that an uncounseled felony conviction could serve as the basis for a felon in possession charge because the language of the relevant firearms statute was broad enough to encompass even those convictions that were subject to collateral attack. The Court stated:

An examination of § 1202(a)(1) reveals that its proscription is directed unambiguously at any person who "has been convicted by a court of the United States or of a State . . . of a felony." No modifier is present, and nothing suggests any restriction on the scope of the term "convicted." "Nothing on the face of the statute suggests a congressional intent to limit its coverage to persons [whose convictions are not subject to collateral attack.]" *The statutory language is sweeping, and its plain meaning is that the fact of a felony conviction*

*imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action,* such as a qualifying pardon or a consent from the Secretary of the Treasury.

*Id.* at 60–61, 100 S.Ct. 915 (citations omitted and emphasis added) (ellipses and brackets in original). This passage is equally applicable to Padilla's case. There is no difference in substance between the language quoted in *Lewis* and that of § 922(g)(1), which prohibits possession of firearms by a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." [1]

*Lewis* teaches that "a convicted felon [must] challenge the validity of a prior conviction, or otherwise remove his [firearm] disability, *before* obtaining a firearm." *Id.* at 67, 100 S.Ct. 915 (emphasis added). Thus, the only relevant circumstance for present purposes is Padilla's status as a convicted felon at the time he possessed a firearm. The state court's later order, *nunc pro tunc* or not, has no effect on that status. *See United States v. Johnson,* 988 F.2d 941, 945 (9th Cir.1993) (affirming felon in possession conviction despite the defendant's claim that his state felony conviction was reduced to a misdemeanor upon his completion of probation because "*on the date he was apprehended with a firearm,* [he] was a felon") (emphasis added); *United States v. McCroskey,* 681 F.2d 1152, 1153 (9th Cir.1982) (per curiam) (finding that a state order expunging the underlying felony conviction *nunc pro tunc* to the date that conditions of probation were satisfied, entered after the defendant was charged with possessing a firearm in violation of federal law, did not warrant

dismissal of the indictment because the defendant "had not 'cleared his status' by obtaining an expungement of his conviction before obtaining a firearm."). Because the record is clear that Padilla's state felony conviction was not invalidated until after his federal conviction, the federal conviction stands.

Padilla contends that *Lewis* and its progeny do not apply to his case because his state conviction suffered from a more fundamental defect than the convictions in those cases did. His conviction, he asserts, was void *ab initio* because the adult division of the court had no jurisdiction over Padilla, a juvenile, in the absence of a transfer hearing and order. We reject this argument for several reasons. First, we are not convinced that the flaw in Padilla's state conviction was any more fundamental than that in *Lewis,* which involved a conviction attended by a denial of the right to counsel. Second, as Padilla concedes, the state court did not lack subject matter jurisdiction over his case; the only "jurisdictional" question concerned which division of the state court should exercise the subject matter jurisdiction that the court unquestionably had over his case. Third, the policy and congressional purpose of § 922(g) are served by requiring a felon to clear his felony record *before* possessing a firearm no matter what infirmity infects his conviction.

Padilla relies primarily on the reasoning of *United States v. Mayfield,* 628 F.Supp. 1515 (D.Kan.1986), a case with similar facts that does support Padilla's position. The Tenth Circuit, however, reversed that decision and held that the "distinction between a conviction that is 'invalid' and one that is 'void from its inception' depends too

---

1. The Court in *Lewis* noted that there was no significant difference between the statutory provision at issue there and 18 U.S.C. § 922(g)(1), because "[e]ach seeks to keep a firearm away from 'any person ... who has been convicted' of a felony." *Lewis,* 445 U.S. at 64, 100 S.Ct. 915.

much on semantics." *United States v. Mayfield,* 810 F.2d 943, 945 (10th Cir. 1987). We agree that the difference in Padilla's case is semantic and has no significance for the purposes of § 922(g)(1).

Padilla argues that a 1986 amendment to the federal firearms statute requires a different result from that reached in the *Lewis* line of cases, including the Tenth Circuit's decision in *Mayfield.* In 1986, Congress amended the statute to provide that the term "crime punishable by imprisonment for a term exceeding one year" is defined as follows:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). Padilla contends that this language has the effect of overruling the holding in *Lewis* and making state law controlling as to both the retroactive effect of a subsequent state order vacating a predicate felony conviction and the question whether the conviction was void *ab initio.*

Padilla's argument cannot be squared with the plain language of the amended § 921(a)(20), which refers to a conviction that *"has been* expunged, . . . or for which a person *has been* pardoned or *has had* civil rights restored." (emphasis added). This phraseology suggests no change in the rule of *Lewis* or *Mayfield;* the expungement, pardon, or restoration of civil rights (whether or not on the ground that the conviction was void *ab initio* ) must occur before the erstwhile felon takes possession of a firearm. The controlling state determination operates only *prospectively,* so that *after* the expungement, pardon, or restoration of civil rights that felony conviction no longer serves to impose a firearm disability. The amendment does not mean, however, "that such a conviction was not disabling between the time it was obtained and the time it was set aside." *United States v. Kahoe,* 134 F.3d 1230, 1233(4th Cir.1998).

Our recent decision in *United States v. Marks,* 379 F.3d 1114 (9th Cir.2004), makes clear that the rule of *Lewis* survived the 1986 amendment to § 921(a)(20). In *Marks,* we addressed the amended § 921(a)(20), but applied *Lewis* to hold that a constitutionally defective state conviction that had never been set aside served as a predicate for conviction under § 922(g). In reaffirming, as we do today, that the amendment to § 922(a)(2) did not abrogate the rule of *Lewis,* we join several of our sister circuits who have reached the same conclusion. *See United States v. Snyder,* 235 F.3d 42, 52–53 (1st Cir.2000); *United States v. Morgan,* 216 F.3d 557, 565–66 (6th Cir.2000); *Kahoe,* 134 F.3d at 1233; *United States v. Lee,* 72 F.3d 55, 58 (7th Cir.1995); *United States v. Chambers,* 922 F.2d 228, 238–39 (5th Cir.1991).

The district court accordingly did not abuse its discretion in denying Padilla's motion for new trial, founded as it was on the state court's *nunc pro tunc* order.[2]

**B**

Padilla next contends that the district court erred in admitting a statement that

---

**2.** Our disposition of this issue renders it unnecessary for us to address the government's contention that the state court's *nunc pro tunc* order did not qualify as "newly discovered evidence" within the meaning of Fed. R.Crim.P. 33(b)(1).

he made to FBI Special Agent Scott Garriola, a member of the FBI's Fugitive Task Force. The statement was made while Padilla was in custody without having been given the warnings required by *Miranda*, 384 U.S. at 444–45, 86 S.Ct. 1602, so the statement was required to be excluded if it was the result of interrogation.

■ Agent Garriola had previously met with Padilla in connection with Garriola's investigation into the whereabouts of a fugitive named Joe Luis Saenz, but Padilla refused to assist in the investigation. The statement in issue was made when Agent Garriola went to the state prison facility and placed Padilla under arrest pursuant to the federal warrant for felon-in-possession charges. Agent Garriola advised Padilla of the federal charges and told him that he was being taken to make his initial appearance before a magistrate judge, but he did not give Padilla any *Miranda* warnings. Agent Garriola said something to the effect that this was Padilla's last chance to cooperate in the Saenz investigation. Padilla responded by declaring that he was not worried about the federal firearms case because the police had planted the gun. The district court concluded that this statement was not the product of interrogation and permitted the government to admit it into evidence.[3]

■ We conclude that the statement was the result of interrogation.[4] Interrogation is defined as express questioning and its functional equivalent. *See Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The functional equivalent of express questioning includes "any words or actions on the part of the police (other than those nor-mally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. 1682 (footnote omitted). An "incriminating response" refers to "any response—whether inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial." *Id.* at 301 n. 5, 100 S.Ct. 1682 (emphasis original).

■ Agent Garriola's "last chance to cooperate" statement constituted interrogation because the agent should have known that it was reasonably likely that such a comment would evoke an incriminating response. It is difficult to imagine any purpose for such a statement other than to elicit a response. The fact that Agent Garriola was seeking a response with regard to a separate investigation does not alter our conclusion. The "last chance" of which Padilla had been advised was the last chance for a possible bargain over Padilla's federal charges, and a response related to those charges was a natural result of the question. The question was "reasonably likely to evoke an incriminating response." *Id.* at 302 n. 7, 100 S.Ct. 1682; *see United States v. Brown*, 720 F.2d 1059, 1068 (9th Cir.1983) ("It is almost axiomatic in criminal investigation that if a suspect is induced to talk at all, he is likely to hurt his case."). We conclude, therefore, that Padilla's statement resulted from custodial interrogation and should have been excluded.

■ The error, however, was harmless beyond a reasonable doubt. *See United States v. Butler*, 249 F.3d 1094, 1098, 1101 (9th Cir.2001). The only usefulness of the

---

3. We review *de novo* the district court's decision to admit a statement that may have been obtained in violation of *Miranda* subject, however, to the harmless error standard. *See United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir.2001).

4. Whether a defendant was subject to interrogation is a mixed question of fact and law that we review *de novo*. *See United States v. Moreno–Flores*, 33 F.3d 1164, 1168 (9th Cir.1994).

statement was that it was inconsistent with the defense Padilla put on—a defense based on the testimony of his passenger, Villa, that Villa had possessed and discarded the gun. The statement that the police had planted the gun may have helped to suggest that Villa's false testimony was subsequently contrived as a means of defending Padilla. There was overwhelming evidence, however, that Villa had been induced to lie to protect Padilla. Padilla spontaneously had told Agent Garriola that he would have a witness appear and claim ownership of the gun. The prosecution introduced a series of letters sent from Padilla to Villa that left little room for doubt that Villa was to take the fall for Padilla, in return for protection by, and benefits from, the gang in the future. We are satisfied beyond a reasonable doubt that the jury's verdict would have been exactly the same had the disputed statement been excluded.

## C

Finally, Padilla challenges the admission of gang expert testimony.[5] The district court permitted the gang expert testimony for the limited purpose of impeaching the exculpatory testimony offered by Villa, the car passenger. The government offered the gang expert's testimony only after Villa testified that both he and Padilla were gang members and that the gun was his rather than Padilla's. Padilla argues that the district court failed to discharge its gatekeeping duties under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). He also contends that the court abused its discretion under Federal Rule

of Evidence 403 because the testimony was more prejudicial than probative.

We have addressed the issue of gang experts in similar contexts in *United States v. Hankey,* 203 F.3d 1160 (9th Cir. 2000), and *United States v. Takahashi,* 205 F.3d 1161 (9th Cir.2000). In both instances, we found that the district court properly assessed the relevance and reliability of the gang expert and did not abuse its discretion in determining that the testimony was reliable and that its probative value was not substantially outweighed by the danger of unfair prejudice.

Similarly, here, the district court considered Detective Eagleson's extensive experience with Los Angeles street gangs, and the Cuatro Flats gang in particular, and determined that he was reliable within the meaning of Federal Rule of Evidence 702. The record supports that determination; there was no abuse of discretion.

The district court also weighed the countervailing factors of Rule 403, and determined that the probative value of the expert's testimony with regard to bias and the ultimate credibility of Villa as a witness was not substantially outweighed by any unfair prejudice that might result. That ruling was also not an abuse of discretion. The subject of gang membership had been thoroughly aired before the gang expert testified. His testimony concerning gang punishment for junior members who fail to support senior members was probative on the truthfulness of Villa's testimony. Although the expert testimony was detrimental to Padilla's case, it was within the district court's discretion to conclude that it was not unfairly prejudicial within the meaning of Rule 403.

**5.** We review for abuse of discretion the district court's ruling on the admissibility of ex-

pert testimony. *See United States v. Hankey,* 203 F.3d 1160, 1166–67 (9th Cir.2000).

## D

As we stated at the outset of this opinion, we have determined in the interest of judicial economy to remand this case to the district court so that it may address in the first instance the sentencing issues raised by *Blakely*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403. The district court may wait for guidance from the Supreme Court in its pending cases of *Booker*, —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838, 2004 WL 1713654, and *Fanfan*, —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838, 2004 WL 1713655, and may then resentence Padilla, and conduct any other appropriate proceedings, in accord with those cases if they affect Padilla's sentence.

### III. Conclusion

The conviction of Padilla is affirmed. The case is remanded to the district court for further proceedings, as necessary, with regard to Padilla's sentence.

**CONVICTION AFFIRMED; SENTENCE REMANDED.**