PD-0414-15

PD-0414-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/14/2015 9:50:04 AM
Accepted 4/15/2015 5:21:08 PM
ABEL ACOSTA
CLERK

PD-_____

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

MICHAEL ANDRADA,
PETITIONER

v.

THE STATE OF TEXAS

\* \* \* \* \* \* \* \* \* \*

Petition in Cause No. 2012-436,468, from the
137th District Court of Lubbock County, Texas,
Hon. John J. McClendon III presiding
and Cause No. 07-13-00278-CR in the Court of Appeals
for the Seventh Supreme Judicial District of Texas

\* \* \* \* \* \* \* \* \* \*

PETITION FOR DISCRETIONARY REVIEW

David Crook, Crook & Jordan
Attorneys-at-Law
PO Box 94590
(806) 744-2082
(806) 744-2083 Fax
dcrook@nts-online.net

Attorney for the Petitioner,
MICHAEL ANDRADA

FILED IN
COURT OF CRIMINAL APPEALS

April 15, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL
(RULE 68.4(a), TEX. R. APP. PROC.)

A complete list of all parties to the trial court's judgment or order appealed from, and the names and addresses of all trial and appellate counsel includes:

MICHAEL ANDRADA, Petitioner
TDCJ#1885819
Clements Unit
9601 Spur 591
Amarillo, TX 79107

THE STATE OF TEXAS, Respondent

FOR THE PETITIONER:

DAVID CROOK, Crook & Jordan
PO Box 94590
Lubbock, Texas 79493
(806)744-2082
 (806) 744-2083 (fax)
State Bar No. 05109530
Attorney for the Petitioner

TRIAL COURT JUDGE:

Hon. John J. McClendon, III
Lubbock County Courthouse
904 Broadway
137th District Court, Lubbock County
PO Box 10536
Lubbock, TX 79408-3536
(806) 775-1022
(806) 767-9656 (fax)

FOR THE STATE OF TEXAS:

MR. JEFF FORD
ATTORNEY FOR THE
STATE OF TEXAS
Office of the District Attorney
Lubbock County
PO Box 10536
Lubbock, TX 79408-3536
(806) 775-1100
(806) 775-1154 (fax)

Hon. LISA McMINN
State Prosecuting Attorney
PO Box 12405
Austin, TX 78711
(512) 463-1660
(512) 463-5724 (fax)

2

# TABLE OF CONTENTS
## (RULE 68.4(a), TEX. R. APP. PROC.)

*PAGE*

PARTIES …………………………………………………..…………….…………………2

TABLE OF CONTENTS ………………………………………………………….......3

INDEX OF AUTHORITIES ………………………………………………………..4

STATEMENT REGARDING ORAL ARGUMENT …………………………………6

STATEMENT OF THE CASE ……………………………………………………..6

STATEMENT OF PROCEDURAL HISTORY …………………………….…..........7

PETITIONER'S GROUNDS FOR REVIEW …………………………………........8

**THE APPELLATE COURT ERRED BY FINDING THAT THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING TESTIMONY OF PETITIONER'S PURPORTED GANG MEMBERSHIP INTO EVIDENCE IN SENTENCING PHASE, WHERE THE PROFFERED TESTIMONY WAS NOT SHOWN TO BE RELIABLE**.

REASONS FOR REVIEW …………………………………………..……………..8

**THE DECISION OF THE COURT OF APPEALS CONFLICTS WITH THE APPLICABLE DECISIONS OF THE COURT OF CRIMINAL APPEALS.**

ARGUMENT ……………………………………………….......................................9

CONCLUSION AND PRAYER …………………………………...…………...12

CERTIFICATE OF COMPLIANCE……………………………………………….12

CERTIFICATE OF SERVICE ……………………………………………………12

APPENDIX …………………………………………………………………….......14

**INDEX OF AUTHORITIES**
(RULE 68.4(b), TEX. R. APP. PROC.)

*PAGE*

**Case Law, Federal**

*United States v. Padilla*, 387 F.3d 1087 (9th Cir. 2004)……………………………………11

**State Statutory Law**

TEX R. EVID. 702…………………………………………………………………………...8

**Case Law, State**

*Hartman v. State*, 946 S.W.2d 60 (Tex. Crim. App. 1997)…………………………………11

*Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992)……………………………………11

*Lasalle Pipeline, LP. V. Donnell Lands, L.P.* (Tex. App.—San Antonio 2011, pet. den.)….9

*Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)………………………9

*Morris v. State*, 361 S.W.3d 649, 656 (Tex. Crim. App. 2011)……………………………11

*Ortiz v. State*, 93 S.W.3d 79, 86 (Tex. Crim. App. 2002)…………………………………..11

*Rayon v. State*, 121 S.W.3d 7, 20 (Tex. App.—Fort Worth 2002)…………………………..9

*Sexton v. State*, 93 S.W.3d 96, 101 (Tex. Crim. App. 2002)………………………………..11

*Vela v. State*, 209 S.W.3d 128, 130 (Tex. Crim. App. 2006)………………………………11

*Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)…………………………9

PD-_____


IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS


MICHAEL ANDRADA,
PETITIONER

v.

THE STATE OF TEXAS

\* \* \* \* \* \* \* \* \* \*


Petition in Cause No. 2012-436,468, from the
137th District Court of Lubbock County, Texas,
Hon. John J. McClendon presiding
and Cause No. 07-13-00278-CR in the Court of Appeals
for the Seventh Supreme Judicial District of Texas

\* \* \* \* \* \* \* \* \* \*


PETITION FOR DISCRETIONARY REVIEW

David Crook, Crook & Jordan
Attorneys-at-Law
PO Box 94590
(806) 744-2082
(806) 744-2083 Fax

Attorney for the Petitioner,
MICHAEL ANDRADA


TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW MICHAEL ANDRADA, Petitioner, by and through his attorney of

record, DAVID CROOK, and petitions the Court of Criminal Appeals of Texas to exercise its

discretionary jurisdiction to review the judgment of the Court of Appeals for the Seventh District

of Texas, Amarillo, Texas.  In support of this Petition, he would show this Honorable Court as follows.

## STATEMENT REGARDING ORAL ARGUMENT
(RULE 68.4(c), TEX. R. APP. PROC.)

The grounds for review set forth in this petition concern the failure of the court of appeals to follow binding precedent; oral argument would be helpful to the Court in distinguishing the factual background of the case as shown in the record inasmuch as the facts of the case play an important role in defining the implications of Petitioner's argument.

## STATEMENT OF THE CASE
(RULE 68.4(d), TEX. R. APP. PROC.)

On October 30, 2012, Petitioner was charged in a two-count indictment.  In Count 1 he was charged under Health & Safety Code § 481.112(d) with Possession with Intent to Deliver a Controlled Substance, Methamphetamine, in an amount between 4 and 200 grams (CR p. 7). The count contained a Drug Free Zone allegation under Health and Safety Code § 481.134, the premises alleged being a school, Cavazos Middle School.  In Count 2 Petitioner was charged with Unlawful Possession of Firearm under Penal Code § 46.04(a)(1).

A non-evidentiary pretrial hearing was held in the case on April 26, 2013 (Reporter's Record ["RR"] v. 2). Petitioner's jury trial on guilt-innocence commenced on July 29, 2013 in the 137th District Court, Hon. John J McClendon presiding.  He was convicted on  July 31, 2013 (RR v. 6, p. 58). Sentencing proceedings took before the jury on the same day.  The jury sentenced Petitioner to life imprisonment in the Texas Department of Criminal Justice, Institutional Division (RR v. 6, p. 151, CR pp. 62-65).  The Court sentenced Appellant accordingly.

Petitioner perfected appeal on August 1, 2013 (CR p. 80).

6

# STATEMENT OF PROCEDURAL HISTORY
## (RULE 68.4(e), TEX. R. APP. PROC.)

The Seventh Court of Appeals rendered its decision affirming petitioner's conviction on March 16, 2015. No motion for rehearing was filed by Petitioner. This petition was then timely filed.

**GROUNDS FOR REVIEW:**

**THE APPELLATE COURT ERRED BY FINDING THAT THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING TESTIMONY OF PETITIONER'S PURPORTED GANG MEMBERSHIP INTO EVIDENCE IN SENTENCING PHASE, WHERE THE PROFFERED TESTIMONY WAS NOT SHOWN TO BE RELIABLE**.

**REASONS FOR REVIEW:**

**THE DECISION OF THE COURT OF APPEALS CONFLICTS WITH THE APPLICABLE DECISIONS OF THE COURT OF CRIMINAL APPEALS.**

# ARGUMENT

GROUNDS FOR REVIEW:  THE APPELLATE COURT ERRED BY FINDING THAT THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING TESTIMONY OF PETITIONER'S PURPORTED GANG MEMBERSHIP INTO EVIDENCE IN SENTENCING PHASE, WHERE THE PROFFERED TESTIMONY WAS NOT SHOWN TO BE RELIABLE.

*The Record*

Petitioner's grounds herein are based on a claim that the evidence the State proffered at trial of his gang membership was not sufficiently reliable under the requirements of T.R.E. 702 to pass evidentiary muster.

Before trial, Petitioner filed his *Motion for Rule 702 Hearing Re State's Gang Testimony*. The Court held a relatively long 702 hearing out of the presence of the jury during trial with testimony from its proffered expert, Billy Koontz of LSO (RR v. 6, pp. 66-94).  After hearing the testimony, the Court overruled Petitioner's 702 objection to Koontz's testimony as an expert to the effect that Appellant was a gang member.  Petitioner objected, *inter alia*, on 702 reliability grounds.  The Court overruled all objections (RR v. 6, pp. 97-99).  Petitioner got a running objection to all gang testimony, Q&A, etc., out of the presence of the jury.

Before the jury, Koontz testified that in his opinion Petitioner was a member of the North Side Locos and the West Texas Tango gangs.

*T.R.E. 702 and the Requirement of Reliability; Standard of Review*

T.R.E. 702 governs the admission of expert testimony.  TEX. R. EVID. 702.  The proponent of scientific or technical evidence must show by clear and convincing proof that the proffered evidence is sufficiently relevant and reliable to assist a fact-finder in understanding the evidence.

Expert testimony must be based on a reliable foundation to be admissible.  The evidence must have a reliable basis in the knowledge and experience of the discipline.  Expert testimony is

8

unreliable and thus inadmissible if it is no more than subjective belief or unsupported speculation. "Expert" testimony that is conclusory or speculative is not admissible. *Lasalle Pipeline, LP. V. Donnell Lands, L.P.* (Tex. App.—San Antonio 2011, pet. den.). A trial court should not consider "expert" opinion based on the assumption of unproven facts. *Rayon v. State*, 121 S.W.3d 7, 20 (Tex. App.—Fort Worth 2002).

At a 702 hearing, the trial court is the sole judge of the weight and credibility of the evidence present, and the court's ruling on admissibility is reviewed for abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The reviewing court considers the trial court's ruling on the admissibility of scientific evidence in the light of the evidence presented at the time of the trial court's ruling. *Id*. at 542. The reviewing court must uphold the trial court's ruling on the admissibility of scientific evidence if it was within the zone of reasonable disagreement and considers whether the trial court acted without reference to guiding rules or principles or whether the trial court acted arbitrarily or unreasonably in so acting. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

*Basis of Testimony for the Expert's Opinion at Trial*

Billy Koontz, the State's purported gang expert at trial, had from his own testimony never worked as a gang coordinator, and did not know which numbered region Lubbock pertained to with regard to gangs. The only document that Koontz had purporting to show Petitioner's gang membership was one he had prepared for the instant case (RR v. 6, p. 72). Koontz did not have anything coming from the Texas Violent Gang Task Force showing Petitioner to be a gang member (RR v. 6, p. 73). Koontz knew nothing of the availability of a judicial proceeding for the purpose of contesting being identified as a gang member (RR v. 6, p. 75). Koontz was unaware of and did not possess any judgment showing that Petitioner had ever been judicially

9

adjudicated to be a member of a gang (RR v. 6, pp. 76-77). Koontz was unaware of any self-admission of gang membership on Petitioner's part (RR v. 6, p. 77). Koontz had no documents claiming to identify Petitioner as a gang member on the basis of information from a "reliable informant," (RR v. 6, p. 77). Koontz had no corroborated identification of Petitioner as a gang member by an individual of unknown reliability (RR v. 6, p. 77).

Koontz admitted that he had no photographs (?) of tattoos of known West Texas Gang members "in the file" (RR v. 6, p. 74). Therefore, he had immediate or direct basis of comparison in terms of photos of known West Texas gang members to compare with any of Petitioner's tattoos (RR v. 6, pp. 74-75). Koontz also claimed that Petitioner associated with known criminal gang members due to some inconclusive Facebook photos that also showed many other individuals Koontz never claimed gang membership for (RR v. 6, pp. 77-78).

Koontz claimed that Petitioner sported "gang colors," but this was based on one photo of him wearing an unmarked red T-shirt (RR v. 6, p. 82). Koontz said that Petitioner had "2320" tattooed on his arm, supposedly referring to the 23rd and 20th letters of the alphabet, those being "W" and "T," and referring to the West Texas gang (RR v. 6, p. 89). Koontz said again that he did not have any photos in his immediate possession to prove his point about any gang tattoos or symbols (RR v. 6, pp. 85-86). When asked which if any tattoos referred to the North Side Locos gang, Koontz gave an answer with little semantic content (RR v. 6, p. 89). When cross-examined about North Side Locos tattoos, Koontz said he "believed" that Petitioner had a tattoo that said "North, or something" (RR v. 6, p. 91).

On redirect, the State made it clear that Petitioner, despite a previous prison stint, was not confirmed in TDCJ as a gang member (RR v. 6, p. 94). Koontz nevertheless opined that Petitioner was *both* a North Side Loco and a West Texas Tango member (RR v. 6, p. 96).

*Did the Court of Appeals Err in Holding that the Trial Court Properly Allowed the Gang Testimony Into Evidence?*

Reliability is one of at least three basic required attributes of scientific or technical evidence, along with the qualifications of the expert and the proffered testimony's relevance. Reliability depends on whether the evidence has its basis in a sound methodology. This requires a "certain technical showing." *Vela v. State*, 209 S.W.3d 128, 130 (Tex. Crim. App. 2006). In a given instance, the "underlying theory" of an area of inquiry may be reliable, but the State may fail at trial to produce evidence of the reliability of the technique used. *Sexton v. State*, 93 S.W.3d 96, 101 (Tex. Crim. App. 2002).

The Court of Appeals, in affirming the conviction and sentence, cited several cases holding that the issue of "gang behavior" is a proper subject of expert testimony. See *Morris v. State*, 361 S.W.3d 649, 656 (Tex. Crim. App. 2011), *Ortiz v. State*, 93 S.W.3d 79, 86 (Tex. Crim. App. 2002), and *United States v. Padilla*, 387 F.3d 1087 (9th Cir. 2004) [Opinion of the Court of Appeals, p. 11]. None of the foregoing cases permitted testimony of gang membership on anything like the sketchy basis shown here.

Petitioner avers that the State was allowed to present purported expert testimony of Petitioner's supposed gang affiliations without a proper showing of reliability as to that testimony. The Texas Court of Criminal Appeals has interpreted Rule 702 of the Texas Rules of Evidence to require a showing that any scientific or technical evidence is both relevant and reliable. See *Hartman v. State*, 946 S.W.2d 60 (Tex. Crim. App. 1997), *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992), along with *Vela, supra*. In upholding the Trial Court's actions by affirming the case, Petitioner respectfully submits that the Court of Appeals failed to follow binding precedent.

11

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner MICHAEL ANDRADA, prays that the Court of Criminal Appeals grant his Petition for Discretionary Review, and that after submission, this Court reverse the decision of the Court of Appeals and remand the Cause for new sentencing proceedings.

Respectfully submitted,

David Crook
Crook & Jordan
Attorney-at-law
PO Box 94590
Lubbock, Texas 79493
(806) 744-2082
(806) 744-2083 Fax
dcrook@nts-online.net
Attorney for the Petitioner,
MICHAEL ANDRADA

 /S/ David Crook
DAVID CROOK
Texas State Bar No. 05109530

## CERTIFICATE OF COMPLIANCE WITH T.R.A.P. 9.4(i)(2)(D)

This is to certify that the length of the foregoing *Petition for Discretionary Review* conforms with the Texas Rule of Appellate Procedure 9.4, in that the brief, computer-generated, is 1,406 words, which is no longer than 4,500 words, exclusive of the pages containing the identity of the parties and counsel, any statement regarding oral argument, the table of contents, the index of authorities, the statement of the case, the issues presented, the signature, and the proof of service.

/s/ David Crook_____
David Crook

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the above and foregoing PETITION

FOR DISCRETIONARY REVIEW was mailed on this day to the Hon. Jeff Ford, attorney for the State of Texas, at his office address of Office of the District Attorney, PO Box 10536, Lubbock, TX 79408-3536. It was also mailed to Hon. Lisa McMinn, State Prosecuting Attorney, P.O. Box 12405, Austin TX 78711, on April 14, 2015.

/s/David Crook
David Crook

**<u>APPENDIX</u>**



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-13-00278-CR

---

MICHAEL ANDRADA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2012-436,468, Honorable John J. "Trey" McClendon, Presiding

---

March 16, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Through four issues, appellant Michael Andrada appeals his conviction and life sentence in prison for possession of four grams or more but less than 200 grams of methamphetamine with intent to deliver, enhanced by a prior felony conviction and a drug-free zone finding.[1] The judgment also contains a deadly weapon finding. We will affirm.

---

[1] TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(d) (West 2010). An offense under section 481.112(d) is punishable by imprisonment for life or for a term of

Background

As part of a narcotics investigation, Lubbock police officers assisted by a S.W.A.T. team executed a no-knock search warrant at a two-bedroom residence occupied by appellant. As officers entered appellant attempted to flee but was apprehended.

A pat-down search yielded a package containing 4.66 grams of a substance that proved to be methamphetamine. Also located on appellant's person was currency amounting to $315 in various denominations. Elsewhere in the residence, officers found a firearm and body armor. They also located scales, plastic bags, a surveillance camera, marijuana, spiral notebooks which, according to trial testimony, contained a record of narcotics transactions, and a substance later identified as a cutting agent for methamphetamine.

Officers associated one bedroom with appellant. It contained a bed. A recently issued traffic ticket found in the room bore appellant's name. A loaded nine-millimeter handgun was on the bed.

---

not more than 99 years or less than 10 years, and a fine not to exceed $100,000. TEX. HEALTH & SAFETY CODE ANN. § 481.112(e) (West 2010). On a showing of a prior felony conviction, the minimum term of confinement is increased to fifteen years. TEX. PENAL CODE ANN. § 12.42(c)(1) (West Supp. 2014). If it is shown that an offense under section 481.112(e) was committed in a drug-free zone, the minimum term of confinement is increased by five years. TEX. HEALTH & SAFETY CODE ANN. § 481.134(c) (West Supp. 2014). Appellant plead true to the prior felony conviction enhancement allegation and not true to the drug-free zone allegation.

2

According to an investigating officer, the other bedroom appeared to be used for storage. It contained tires and bags. In this bedroom, officers found body armor. [2]

Appellant was charged, convicted, and sentenced as noted.

Analysis

Admissibility of Body Armor

Through his first issue, appellant argues the trial court abused its discretion by admitting evidence of the presence of the body armor discovered in the residence. He characterizes the error as one involving the admission of evidence of other crimes or wrongs in violation of rule of evidence 404(b).

During testimony an officer explained body armor contains a "ballistic material" intended to stop or slow the impact of a bullet. Another officer testified in his opinion a person dealing narcotics might have "digital scales, baggies, and a lot of times, they'll have firearms, body armor, to protect the narcotics." Another officer testified similarly. The officer agreed that in the residence police located narcotics, money, body armor and a firearm. Over objection, the court admitted the body armor into evidence.

The admissibility of evidence is within the discretion of a trial court and will not be overturned absent an abuse of discretion. *Moses v. State,* 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the ruling comes within the zone of reasonable disagreement, an appellate court should affirm. *Id.*

---

[2]  "[B]ody armor' means any body covering manifestly designed, made, or adapted for the purpose of protecting a person against gunfire." TEX. PENAL CODE ANN. § 46.041(a) (West 2011). It is a third-degree felony offense for a previously convicted felon to possess body armor. *Id.* at 46.041(b),(c).

Under rule of evidence 401, evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. TEX. R. EVID. 401; *Moses,* 105 S.W.3d at 625. Relevant evidence is presumed admissible. TEX. R. EVID. 402; *Moses,* 105 S.W.3d at 625. Under rule 404(b), evidence of other crimes, wrongs, or acts is inadmissible to prove a person's character for the purpose of showing action in conformity therewith, but is admissible for other purposes such as showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b); *Montgomery v. State,* 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on reh'g); *Hollis v. State,* 219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no pet.).

Although as noted possession of body armor by a convicted felon is itself an offense, the court did not instruct the jury of that fact, nor do we find an indication in the record the jury otherwise was made aware of it during the guilt-innocence phase of trial.[3] It is our assessment that the body armor was not presented as evidence of a separate wrongful act under rule 404(b). To assess appellant's challenge to admission of this evidence we will, however, consider it as addressing the body armor's relevance. *See* TEX. R. APP. P. 38.1(f) (issue in appellant's brief treated as covering every subsidiary question fairly included); 38.9 (briefing rules construed liberally).

---

[3] A limiting instruction in the charge pertained to evidence "tending to show that the Defendant herein committed offenses other than the offenses alleged against him in the indictment." The jury could consider such evidence only for "determining the motive, intent, preparation, plan, knowledge." Had the jury also been told appellant was a convicted felon and possession of body armor by a felon is unlawful, the instruction would guide their consideration of the body armor.

In its context with the other evidence of narcotics dealings presented, we believe the body armor was probative of appellant's intent to deliver narcotics. *See United States v. Mays,* 466 F.3d 335, 341 (5th Cir. 2006) ("The firearms, body armor, scales, measuring cup, and baggies all qualify as 'tools of the trade' that indicate that [the defendant] did not intend to keep the cocaine base for personal use"); *United States v. McDowell,* 762 F.2d 1072, 1075-76 (D.C. Cir. 1985) (per curiam) (explaining "someone who intends to sell a substantial amount of [a controlled substance] is more likely than an ordinary drug abuser to fear that others might try to shoot him, and to acquire a bulletproof vest in order to guard against that danger . . . . The vest was logically part of the specific equipment [the defendant] might use in selling the drug, and thus tended to show that [the defendant] actually intended to make such sales").

Further, the body armor was relevant to the deadly-weapon inquiry. *See United States v. Young,* 68 Fed. Appx. 744, 2003 U.S. App. LEXIS 7432, at *3-4 (8th Cir. 2003, Apr. 21, 2003) (per curiam) (bullet proof vest and ammunition were probative of felon's possession of firearms and the probative value of evidence was not outweighed by the danger of unfair prejudice). "In both the case of drug paraphernalia and drugs and the case of a bullet-proof vest and a firearm, the relationship between the contraband and the tools sometimes used with contraband allows a logical inference to be drawn." *United States v. Lee,* 612 F.3d 170, 184 (3d Cir. 2010).

Finally, even if considered under rule 404(b), the vest was not offered to prove appellant's character but was "squarely relevant on the issue of intent." *McDowell,* 762 F.2d at 1075.

5

Appellant's first issue is overruled.

Improper Jury Argument

Through his second issue, appellant asserts the prosecutor, during jury argument in the guilt-innocence phase of trial, misinformed the jury of the law on a deadly weapon finding by stating, "Now, Ladies and Gentlemen, you don't have to go back there and say he actually had [the firearm] in his hand. The State does not have to prove that he actually was putting it in his hand."

Counsel for appellant objected, saying the prosecutor's argument was a misstatement of the law. The trial court overruled the objection but immediately instructed the jury, "The Jury is—is directed, however, to refer to the Court's Charge in regards to what the law is." Earlier in his argument the prosecutor told the jury, "[The charge] gives you all the answers you need. If you have a question about the law, and you refer back to this."

The charge included the following deadly-weapon special issue to be answered only if the jury first found appellant guilty of he charged offense: "Do you, the Jury, find beyond a reasonable doubt that the Defendant used or exhibited a deadly weapon, namely a firearm, during the commission of the offense for which he has been convicted?" The question required the jury to respond either "we do" or "we do not." The charge did not define the terms "use" or "exhibit" or give the jury further instruction regarding the application of those terms to this case. The charge contained a general instruction that undefined terms should be given their common meanings.

During its deliberation the jury sent out two notes relating to the deadly-weapon special issue. It first asked "what happens" if, having agreed to appellant's guilt, the jury could not agree on the deadly-weapon question. Next, it inquired "is testimony available for us to review stating where and how the gun was discovered?"

On appeal, appellant does not explain in what sense the prosecutor's statement was a misstatement of the law. "The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence." *Harris v. State,* 122 S.W.3d 871, 883 (Tex. App.—Fort Worth 2003, pet. refused). In so doing, counsel may correctly quote or paraphrase the law found in the jury charge. *Whiting v. State,* 797 S.W.2d 45, 48 (Tex. Crim. App. 1990); *see Bess v. State,* No. AP-76,377, 2013 Tex. Crim. App. Unpub. LEXIS 334, at *94 (Tex. Crim. App. Mar. 6, 2013) (not designated for publication) (explaining during closing argument parties may correctly explain the law contained in the jury charge and its application). "Each side is entitled to explain a legal concept as long as the example given by counsel does not constitute a statement of the law contrary to that in the charge." *Eckert v. State,* 672 S.W.2d 600, 603 (Tex. App.— Austin 1984, pet. refused).

The Court of Criminal Appeals in *Patterson v. State,* 769 S.W.2d 938, 941 (Tex. Crim. App. 1989), stated that "used . . . a deadly weapon" during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose, while "exhibited a deadly weapon" means that the weapon was consciously shown or displayed during the commission of the offense. *Id.* "Used. . . during the commission of a felony offense" refers to the wielding of a firearm with effect, but also

7

extends to any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony. *Id.* One can "use" a deadly weapon without exhibiting it. *Id. See Plummer v. State,* 410 S.W.3d 855 (Tex. Crim. App. 2013) (discussing *Patterson*); *Coleman v. State,* 145 S.W.3d 649, 655 (Tex. Crim. App. 2004) (stating, in possession with intent to deliver case, defendant's physical proximity to deadly weapon is not determinative for deadly weapon finding; rather, the "[t]he real question is whether the weapons are found to have facilitated [the defendant's] possession and intended distribution of the drugs"); *cf. Gale v. State,* 998 S.W.2d 221, 225-26 (Tex. Crim. App. 1999) (concluding that the evidence was legally sufficient to find defendant "used" firearms found by police in a closet with marijuana for purposes of the deadly weapon special issue). In the present case, an officer gave opinion testimony that a person dealing narcotics might possess a firearm "to protect the narcotics." Thus the jury could have believed appellant used a firearm to facilitate the charged offense. The prosecutor's statement was not contrary to the law and charge.

Appellant's second issue is overruled.

Expert Testimony on Gang Affiliation

At the punishment phase of trial, an officer rendered opinion testimony concerning appellant's gang affiliation. By his third issue, appellant argues the testimony should have been excluded because it was not reliable. Following a hearing outside the presence of the jury the trial court overruled appellant's objections to the officer's testimony, including one raising reliability.

8

The officer testified he has been a licensed peace officer since 1989. In that capacity, he has worked in narcotics units, a police "gang unit," as a robbery homicide detective, and with a DEA task force. Currently he investigates offenses including gang-and narcotics-related offenses. He is trained in gang-related matters, has dealt with street and prison gangs in Lubbock since 1991, and has taught officers and others involved in the criminal justice system about gang affiliation and identification. He has testified in state and federal courts on gang affiliation.

During testimony the officer identified the Lubbock street gangs, including one known as the North Side Locos. He also discussed the West Texas prison gang. The officer explained that certain local street gangs such as North Side Locos do not operate separately within prisons so their members are inclined to join West Texas for protection.

In the officer's opinion, those involved in street gangs tend to obtain tattoos containing symbols and numerals designating affiliation with a particular gang. The officer discussed a series of admitted photographs depicting appellant's tattoos.

In the photographs, the officer noted a tattoo containing a red bandanna which he believed was indicative of the North Side Locos, whose color is red. Another tattoo containing the words "north side" identified with the North Side Locos. The officer attributed another tattoo to the North Side Locos gang and West Texas gang based on red strains in the attire of its characters and the words "West Texas," inscribed on a character's cap. The officer agreed that the North Side Locos traffic in narcotics for financial gain. This he found represented by tattoo characters with money. The officer

9

rendered the opinion that appellant is a member of the North Side Locos and the West Texas Tango.[4]

We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Tillman v. State,* 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Coble v. State,* 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). Generally, testimony concerning the gang affiliation of a defendant may be relevant and admissible at the punishment phase of trial to show the defendant's character. *Garcia v. State,* 239 S.W.3d 862, 866-867 (Tex. App.—Houston [1st Dist.] 2007, pet. refused); *see* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (West Supp. 2014).

In performing its gatekeeper function as to the admissibility of expert testimony, a trial court must determine that (1) the witness qualifies as an expert by reason of knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is appropriate for expert testimony; and (3) admitting the expert testimony will assist the fact-finder in deciding the case. *See* TEX. R. EVID. 702; *Vela v. State,* 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *Rodgers v. State,* 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). These conditions are usually known as qualification, reliability, and relevance. *Vela,* 209 S.W.3d at 131.

Here, the opinion testimony of the officer concerned "soft" science. *See Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App. 2000) (distinguishing "hard" from "soft" sciences). The reliability of soft science evidence may be established by showing that the field of expertise involved is legitimate, the subject matter of the

---

[4] Earlier in his testimony the officer stated his opinion the West Texas gang and the West Texas Tango gang are the same gang.

expert's testimony is within the scope of that field, and the expert's testimony properly relies on or utilizes the principles involved in that field. *See id.*

The study of gang behavior is a generally accepted field of expertise. *Hernandez v. State,* No. 01-06-00779-CR, 2013 Tex. App. LEXIS 5228, at *52 (Tex. App.—Houston [1st Dist.] Apr. 30, 2013, no pet.) (mem. op., not designated for publication); *see Morris v. State,* 361 S.W.3d 649, 656 (Tex. Crim. App. 2011) ("Other generally accepted areas of expert testimony may involve the gaining of specialized knowledge through experience or personal research: the behavior of gangs . . ."); *id.* at 656 n.31 (citing *Ortiz v. State,* 93 S.W.3d 79, 86 (Tex. Crim. App. 2002) (noting officer in sheriff's department rendered expert testimony on prison gangs) and *United States v. Padilla,* 387 F.3d 1087, 1094 (9th Cir. 2004) (finding expert testimony of a detective based on his "extensive experience with Los Angeles street gangs, and the Cuatro Flats gang in particular" was reliable)).

The officer's testimony concerning street and prison gangs, and particularly the North Side Locos and the West Texas prison gang, included matters such as gang-specific words, numbers, and colors, as well as gang purposes like narcotics trafficking and protection in prison. Such testimony is within the scope of gang identification expertise.

Finally, the officer's opinion testimony was supported by law enforcement experience including dealing with street and prison gangs in Lubbock since 1991, training which included instructing other criminal justice professionals in gang affiliation and identification, and prior expert testimony in state and federal courts. We find the

11

trial court did not abuse its discretion by implicitly finding the evidence of gang identification and affiliation presented through the officer was sufficiently reliable to permit its admission. *See United States v. Thomas,* No. 10-4725 and No. 10-4729, 490 Fed. Appx. 514, 2012 U.S. App. LEXIS 15001, at *14-15 (4th Cir. July 20, 2012) (noting reliability of the testimony of a gang expert depends heavily on the expert's knowledge and experience rather than the methodology or theory behind it).

Appellant's third issue is overruled.

Omission from the Record of the Charge and Verdict Forms

In his fourth issue appellant argues the trial court denied him due process by failing to resolve a matter regarding an omission from the clerk's record on appeal pursuant to the procedure of appellate rule 34.5(e).[5]

In his initial appellate brief, appellant made us aware that the court's charge on guilt-innocence and the verdict forms were not contained in the clerk's record. In a letter to the parties we pointed out appellate rule 34.5(e) and granted appellant time to pursue relief under the rule and supplement his brief if necessary. The parties did not reach a stipulation under rule 34.5(e). We are not told the reason. But appellant filed in

---

[5] Appellate rule 34.5(e), entitled Clerk's Record Lost or Destroyed, provides:

> If a filing designated for inclusion in the clerk's record has been lost or destroyed, the parties may, by written stipulation, deliver a copy of that item to the trial court clerk for inclusion in the clerk's record or a supplement. If the parties cannot agree, the trial court must—on any party's motion or at the appellate court's request—determine what constitutes an accurate copy of the missing item and order it to be included in the clerk's record or a supplement.

TEX. R. APP. P. 34.5(e).

the trial court a "motion to supplement clerk['s] record on appeal," to which he attached unsigned copies of a charge and verdict forms, bearing the style of appellant's case in the trial court. His motion stated that he believed his attachments were "correct copies." Nonetheless, his motion asked the court to determine "what constitutes an accurate copy" of the missing jury charge and verdict forms, and order that they be included in the clerk's record. The trial court signed an order granting appellant's motion.[6] Shortly thereafter, a supplemental clerk's record containing appellant's motion and the court's order was filed in this court. Within the time allowed, appellant filed a supplemental brief raising his due process issue. As we understand it, appellant's complaint is that the trial court did not render "a full judicial determination of the issue . . . ."

The State's brief responds both to appellant's initial and supplemental briefs. With regard to this fourth issue, the State points out it had arranged for the court reporter to submit a transcription of the trial court's reading of the guilt-innocence charge and the deadly-weapon special issue to the jury. A supplemental reporter's record was filed containing such a transcription.

Appellant's fourth issue lacks merit. We have no record that appellant notified the trial court of his complaint that the rule 34.5(e) order the court signed, or the court's action pursuant to the order, denied him due process. Thus, no complaint about the trial court's action is preserved for our review. TEX. R. APP P. 33.1(a). Appellant made one objection to the charge at trial but does not complain of charge error on appeal. Although the appellate record still does not contain a verdict form signed by the jury

---

[6] From our examination of the supplemental clerk's record containing the court's order, it appears the order the court signed was provided by appellant.

foreperson, the reporter's record reflects the trial court asked, and was told, the verdict was unanimous, and read the verdict. The court then read the special issue and the affirmative answer, and remarked, "It is signed by the foreperson of the Jury." Appellant did not poll the jury, and raised no objection to the announcement of the verdict. Even now appellant does not tell us what he thinks may be wrong with the charge or verdict forms. We further note the charge at punishment, contained in the appellate record, begins with the recitation that the jury found appellant guilty of the charged offense. Appellant made no objection to this statement in the trial court and does not complain about it here.[7]

For all these reasons, we overrule appellant's fourth issue.

Conclusion

The judgment of the trial court is affirmed.

James T. Campbell
Justice

Do not publish.

---

[7] Appellant was represented at trial by the same attorney who represents him in this court.